And we'll call the case of Government of the Virgin Islands v. Michael Lewis. Mr. Caddy. Thank you, Your Honor. Good morning, Your Honor. So it pleases the court, my name is David Caddy and I'm counsel for the appellant Michael Lewis. With the court's permission, I'd like to reserve three minutes for rebuttal. Go ahead. Your Honor, Michael Lewis has been in jail for over a decade for a crime which a jury has already concluded he was justified in committing, Your Honor. As the court's, I'm sure, aware, he was charged with murder in the first and second degree and also with unlawful possession of a firearm during a crime of violence. The jury was charged in this case with the defense of self-defense and returned a verdict of not guilty. What the jury was not advised of, Your Honor, was what I guess is called the Panter defense, the Pelela defense of justification as it refers to possession of the firearm in this case, Your Honor. The court here is required to... Nor were they requested to be charged. Absolutely, Your Honor. It was not requested, although it had been in the circuit for about a decade. I will concede that it hadn't been applied to the local statute, but the federal statute, it had been applied to. We're reviewing for plain error. Yes, you are, Your Honor. That then raises to me the question, since you've suggested the kind of percolation within the circuit of the availability of this defense and the fact that our test requires us first to identify an error that is plain, isn't it conceivable that counsel for strategic reasons might choose not to ask for that defense with respect to the unauthorized possession charge? I can't conceive, Your Honor, of someone raising the defense of self-defense and having a strategic reason of not raising the defense of justification to use the very firearm that was used in self-defense. Well, isn't it possible that there could be such a reason, whereas here the government ended up amending its information to expand the period of time of the possession such that that period of time implicated not merely the fleeting event of the shooting in the car, but also the shooting earlier in the day of the dog, and subsequent to the shooting, the possession of the weapon within the car up to the point that Mr. Lewis disposed of it. Isn't it conceivable that one would not want the charge because, for argument purposes then, that would open up the prospect of highlighting those facts? Isn't that at least conceivable? I don't believe that it is, Your Honor. The reason I say that is because, although you're indicating the government tried to expand the timeline. Remember, the charge here was always possession of the firearm during a crime of violence. And, of course, as I pointed out, pet euthanasia would not be included in that, Your Honor. I don't believe that it was expanded to... Pet euthanasia wouldn't, but if the jury was reminded that Mr. Lewis had this gun earlier the same day, that would be pretty inconsistent with Mr. George pulling the gun out of no place later in the day. Maybe defense counsel really didn't want that idea being pushed in front of the jury again for fear that it would erase any reasonable doubt about whether Mr. Lewis brought the gun to the party when Mr. George pulled it out. And, of course, the possession of the gun was no less authorized earlier in the day when they were dealing with the animal. It was not, Your Honor, but I would hesitate to conclude that Mr. Lewis was on notice that he was being charged with the possession of the firearm as it related to the dog being shot, Your Honor. Well, it doesn't have to be necessarily with relation to the dog, nor notice be as to that. That happened to be one of the events that's in the record. But the point was that the charges set forth in the information of unauthorized possession had a period of time that was much more extensive than the fleeting episode of the shooting, right? So that that enabled the government to offer evidence of possession throughout that continuum. Certainly, Your Honor, but we have to, if you have to look at the charge as a whole in the information, and it specifically refers to the act of possession in the fire in the vehicle during a crime of violence, it's specifically pointing the murder charge, not to the he shot the dog earlier in the day. And in addition to that, Your Honor, the reason the government brings up the he had the gun earlier in the day is to try to discount his claim of self-defense, which the jury obviously rejected because if Mr. Lewis had possessed the gun earlier in the day, I don't think it's conceivable they would acquit him of the murder based on a self-defense claim. Isn't it entirely possible that the jury may have said, well, we can't say beyond a reasonable doubt that the shooting, even if Mr. Lewis brought the gun, that the shooting was not somehow in self-defense. And at the same time, have the jury believe, well, you know what, if you shoot the dog earlier in the day, and ballistics shows you did it, and your grandma fingered you for the dog death, then stands to reason that the gun didn't suddenly materialize Mr. George's hand by surprise later in the day, we think it's his gun. We think he had it. We think he is guilty beyond a reasonable doubt for that. Why isn't that a completely consistent frame of mind for a jury to come back with? I just don't think there were any facts in the record that the jury could say Lewis had the gun earlier in the day. And then how would the gun, how would he act in self-defense later in the day in the vehicle? I just don't see that as being, there's certainly no evidence in the record of that. It just has to be a reasonable doubt, right, Mr. Caddy? It just takes for them to say, well, we don't really know what Mr. George did that might have prompted Mr. Lewis to pull the gun. That's all it would have taken, right? I agree with that, Your Honor. And if Mr. Lewis had been convicted of the murder, Your Honor, and he didn't have the instruction of temporary possess for self-defense, I think I would agree with you. But here we have the jury, basically the story's out there. There's no denying the facts. Mr. Lewis shot and killed Michalis George. The only question before the jury was whether or not he was acting in self-defense. And in the absence of that jury instruction, Your Honor, we're left to speculate. If there was the jury instruction there, I don't think we would have to speculate. But our obligation as an appellate tribunal is to look at the verdict in the light most favorable to the government, right? Not in this case, Your Honor. No. No, because for two reasons. One is because it's an absence of a jury instruction, which requires the court to look at the evidence in the light most favorable to the defendant. In addition to that, Your Honor, we have a jury verdict here, which is at least partially favorable to the defendant in this case, which is the acquittal. And as specifically relates to the main issue in this case, the court's required to view the facts in the light most only the conviction. Sure. But under either standard, Your Honor, because the issue the issue is one of a jury instruction, a missing jury instruction. You have to view the facts most in the light most favorable to the defendant, Your Honor. And the Apollo case says that in all the cases dealing with jury instructions indicate that they say the law is very clear in this area. Yeah, I'm glad that well, how's the law clear this area? I mean, that's your standard. I mean, it's got to be pretty clear and obvious to get to climb the hill. You got to climb up. But I'm not so sure the law is so clear here. Your Honor, if I can ask, are you referring to whom you view the evidence? I'm getting rid of the gun after the use. Sure. And if it's not, Your Honor, well, I would say it is. And here's why. Under both the Third Circuit cases, Gray and Gray, and he doesn't turn the gun over to the police. He doesn't do anything. These guys actually flee the police in both cases, in the Third Circuit cases. They flee the police. They never hand the gun over to the police, Your Honor. And then there's an additional case which wasn't cited. He doesn't hand the gun over either, right? I'm sorry? And your client didn't hand the gun over either. Exactly. But they don't hand the gun over in Gray either, and he's still entitled to the jury instruction, is my point, Your Honor. There has never been a holding in this circuit that says you have to turn the gun over to the police. In the main cases, neither of these turn over the case either, right? This is sort of the question that's up in the air, and obviously the District Court cited some cases that do say you have to hand it over to the police. And doesn't that make your heel harder to climb when we're reviewing for plain error? I don't think it does, because the Third Circuit cases have dealt with an issue where the defendants didn't hand over the gun to the police, and they were still entitled to the instruction. What the Third Circuit, excuse me, what the District Court was adding an additional element and saying, henceforth, or saying, actually, you were always required to turn this firearm over to the police. But that was never the holding of Third Circuit, Your Honor. And if you look at my replied brief, Rick's case in the Fourth Circuit, the same kind of argument came up. The District Court said, this gentleman did not turn the firearm to the police. He took the gun, and he put it on a dresser drawer. And the District Court did the same thing. You're not getting the justification defense. The Fourth Circuit came back and said, no, you have to look at the circumstances of the case. Well, now, your client, is it fair to say, did not safely dispose of the gun? It's difficult for me to say, because he threw it, and I believe, they call it a trash bin. Your Honor, if you're familiar with the Virgin Islands, these are big roadside garbage pails. Might not be the smartest thing to do. But you remember, we're sitting here in a courtroom pondering these things. This is a man who was just involved in a life and death struggle. He gets rid of the firearm. And what I said is the District Court gave him basically a choice. He holds on to the gun and takes it to the police station. The court might say, you know what, you should have got rid of it right away. You held on to it for too long. And you actually look at the... That may be, but what about, but is this a safe disposal of the gun? Under the circumstances, there's no ideal thing to do here. And I think throwing it in a garbage bin is as safe as his other options, which were leave it on the street or leave this man to die in a car with a gun in it, which I don't think is, as the record indicates, he drove Mr. George to the hospital. But he was really in a situation where there was no perfect thing for him to do. And I think he made what was a reasonable choice, which is get rid of the gun, throw it in a dumpster. That strikes you as reasonable. To fabricate a lie, just leave the police, throw a weapon into a garbage can, quote-unquote, and then only later when confronted with irrefutable facts, that the guy who had the gun earlier in the day say, yeah, I had it, I'm done. That's the reasonable thing? Your Honor, I understand he did not do the right thing, but the jury... I'm not talking just right. I'm just talking reasonable. You said what he did was reasonable. Well, we have to look. His possession of the firearm ends when he throws it in the dumpster. What he did later might not have been a good thing, but that does not relate back to his dispossessing of himself of the firearm. Doesn't it, if you say, looks like it's all part of trying to cover up criminal behavior? Which is what the government's argument was to the jury in this case. And the jury found the facts in favor of my client as related to the murder case. So I don't know if he can... I think that's a good trial argument, but now we have a jury verdict. No, no, no. I'm not focusing on the shooting. I'm focusing on the criminal behavior of having the gun. Hiding the possession of the gun by disposing of the gun. Yes. He dispossessed himself of the gun. There is certainly no rule in the circuit that says... And if you look at the great case, these guys run with the gun. They're running from the police actively. So I don't think you can say that is worse than my client misleading the police. These guys actually ran away with the firearm, and this court held that they were still entitled to that jury instruction. Your Honor, I see that my time is ending. Oh, I'm sorry. We'll have you back on rebuttal. Thank you very much. Good morning. My name is Richard Davis. I'm an assistant attorney general, and I'm here on behalf of the government of the Virgin Islands. I would just start with a couple of the matters that were brought up here by a learned adversary. To begin with, this defendant didn't just throw the gun away. He testified that he wanted to... He came up with a story that he wanted to tell the police with regard to what had happened, and he took the bloody shirt of his victim and the gun and threw them both in the garbage so that he could tell the police that he had been the victim of... They had been the victim of a drive-by shooting. He didn't drive his friend to the hospital. He drove to the police station to tell them this story he had come up with and was directed by the police to take the dying victim to the hospital. Let me return you, please, away from those factual issues which we can return to, but I'd like to start with a standard of review. We're reviewing here for plain error, correct? Yes, sir. And if I understand the government's position correctly, as said out in the red brief, the government believes that Mr. Lewis was simply not entitled to the justification instruction on the unauthorized possession charge. Am I correct? Yes, sir, you are. All right. Would you just take that and explain why legally you believe he was not entitled to that instruction? Well, most of it is based on his testimony, and what he testified to was... And other testimony that came out that there was a relationship between these people, that they got in the car, that he got in the car... When he got in the car, he was not frightened. He told the prosecutor that he got in the car willingly with his friend and that all the time that they spent driving around St. Thomas, he said they drove up and down and all over the hills, the defendant had a gun in his hand, but that he wasn't looking at the defendant, he was shifting gears and he was driving the famous crooked roads of St. Thomas. There was... What precipitated the incident here was not anything that the victim did. What precipitated the incident, granted that according to the testimony of the defendant, there was an acrimonious discussion going on that they were fighting verbally, but what precipitated everything was his grabbing the gun. Again, you're arguing the facts of that day, and I'm more interested in hearing your position with respect to the entitlement, well known by Mr. Lewis, of a self-defense instruction with a view toward the condition of the Third Circuit jurisprudence at that time. What about Palo, which Mr. Caddy referred to in his argument? Is there not a basis in then existing law for the court to have given such an instruction on the possession charge? There had to be, in order for the court to have given such instruction, there had to be sufficient evidence that there was a basis for it. My position is that the evidence, if you read it carefully, does not provide such evidence. All right, well if you're not going to about the law of the circuit and the availability of such a charge, let me ask you a different question. Isn't Mr. Caddy correct that we're required here to view the evidence in the light most favorable to Mr. Lewis in deciding if the instruction should have been given? No, I don't think so. I think because there was no request for the jury instruction, the particular one, that again, under the plain error standard, what the court has to do is establish that there was plain error. And our position is that there was no plain error to begin with. And that none of the problems of the Palo test are met here. And that this is an argument that has been fabricated out of almost whole cloth. There's no question the man was there. The other fabrication, if I may have just for a second, the idea that somehow the jury found that they believed a justification defense. That's not in the record. I think the only thing that one can conclude from the verdict is that the prosecution failed to prove its case. It failed to prove malice and or a forethought. And it failed to prove murder. Why do you say, Mr. Davis, that that's the only interpretation the record will bear? Maybe they believe the defendant. That's conceivable, right? If they believe the defendant, that this was self-defense, that the shooting happened, but it was justified because it was an action taken in self-defense. That's certainly a plausible understanding of the jury's finding of not guilty, isn't it? It's an understanding. And it requires a two-step plausibility that they believed the jury and that they interpreted what he did in the way in which his attorney directed it. It's possible. OK. So if that's a plausible view of what the jury did, what is the flaw in the defense argument here that if I shot him because I had to, I necessarily possessed the gun with justification as well? Because the length of time is clearly the flaw. The period of possession? The period of possession. That he not only had it for the purpose of defending himself, allegedly, but he then picked it up for the purpose of disposing of it in a manner so that he would not be thought to have committed a crime. He possessed it for the gun to the police. Clearly, that time alone is an unauthorized possession. And when they add it to the earlier time, which his grandmother testified to, establishes the possession, I think, without much question. Can I ask you about the law? OK. Now, we've got our case, the Paola case, or however you want to pronounce it. OK. But the district court went a little further, I think. Didn't they say that he faulted the defendant for not giving the police the gun? Does our case law require that? I don't think so. I think that there are circumstances in which it would not be required. How would you propose, then, we deal with this problem? Well, I think you should look at this case as not merely not giving the police the weapon, but instead, disposing of the weapon in a manner to try and keep it from the police, and in a very public manner. A garbage dump is open to the public. And so, no, I don't think that, specifically, someone must turn it right over to the police. But that may be the best course of action. Let me ask, if I might, about the nickname, shifting gears from the objection that the jury was told that the defendant's nickname was Rambo, and the business about the hunting knife. At one point, on page four, I think it is, of the district court's opinion, it indicates that there was an objection to that. Later, on page 15, it says we're reviewing for plein air, because it wasn't objected to. Was that objected to or not? The Rambo nickname? Yeah. I believe it was objected to. In my reading of the transcript, I thought, however, though, that he was referred to throughout the trial. Even though there was an objection and there was an instruction issued with respect to it, both he himself and other witnesses referred to him as Rambo. Clearly, that was his nickname. I think the objection was probably as to the story of the knife, which was, I guess, how he got the nickname. Yes, I mean that. I meant to say, as to the whole business, the knife, Rambo, the knife. So that, your reading is, there was an objection. Yes, I believe there was. No, I would just, if I may sum up and suggest that there is not much here, that with respect to the jury instruction argument, the instructions that were given were very clear and plain with respect to self-defense and unauthorized possession. It is also possible that a jury could have read into that justification defense, particularly with respect to the self-defense instruction which was given. And also, the instruction with respect to the possession of the weapon was that any unauthorized possession, except for a justified or innocent possession, was unauthorized. And so the jury, I think, had plenty of information before it with respect to the issue of justification, had they, and then could certainly have interpreted from the instructions they were given, circumstances that would provide for such justification. The other arguments with respect to the alleged lack of instruction, that the instruction should have been given, and given so, was an error, not just a plain error, but one that would have affected the outcome of the trial and would have been significant in all that, are just dull to materialize. I would ask the court to affirm the decision of the district court, and if there are no further questions. No, thank you. Thank you very much, Mr. Davis. Mr. Cady, rebuttal. Just to correct one of counsel's factual assertions that my client had the gun when he drove to the police station. I don't, that is not supported in the record. He dispossessed himself with a firearm before he went to the police station. And if the court would listen to the government's argument and the district court, they're arguing two different things. And the government's saying he possessed it too long. The district court said he didn't possess it long enough. And the reason that, the reason they make these arguments, the reason I say that is because the district court said he should have had it when he went to the police. The government is saying he should have thrown it out the window during the fight. And the problem with these arguments is what the government is really re-arguing is self-defense, which is one of the reasons I say that a reversal is required here. If you read the government's brief, I think between page four, pages 14 and 16, they take issue with whether or not he would be entitled to defense. The first thing they say is he wasn't under a present threat of harm. And they say that throughout the argument. To reconsider that issue is to ask the jury to reconsider whether or not the self-defense defense was valid, Your Honor. And that's the reason I said that that cannot be done. I think that's a collateral estoppel issue there, Your Honor, as it relates to the government's re-argument. And the third circuit case law has never required some benevolent intent after you possess the firearm for a legitimate reason. In both Puello and Gray. So how long is good enough? So you shoot somebody, can you drive around with it for a half hour? I don't think that would be reasonable. And that's not what occurred here. How do we know how long he had it? Well, the only testimony in the record is I think he pushes it by the side. He doesn't say how many minutes he had it, but I think the He had it long enough to get to a dumpster to dispose of it, right? Yes, Your Honor. But I think we'd have to look at the... What about the fact that he not only dispossessed himself of it, he did it in such a way that he secreted it, didn't he? Doesn't that count for something? Well, Your Honor, maybe going forward it should, but the law that existed at the time in both Puello and Gray, remember both these gentlemen flee from the police with the firearm. I think in Puello, he throws the gun down and then he continues running. I think that happened with both Puello and Gray, Your Honor. So I think in those situations, those actions are just as bad, if not worse, than what transpired here. Well, evidently not. When you say they're just as bad, in those instances, the courts apparently looked at it and said, well, you dropped the gun after you did what you did, and that's maybe within the realms of the justifiable. In this case, he doesn't drop the gun, he doesn't call the police, he drives someplace, finds a garbage can and hides it. That period of time makes this different from Gray and Puello case. Well, I think what you have to look at, and I think what the Fourth Circuit and Rick says, going to the police is reasonable in some situations, but I don't... Remember, my client is driving the victim to the hospital. There's no evidence that he had an opportunity between that dumpster and pushing the body into the passenger seat to dispossess himself of the firearm. You have to look at a reasonable situation. This is a life and death struggle. I think to look back and say instantaneous dispossession, that might have been just throwing it in the street. I think that would have been worse than throwing it in a garbage pail, Your Honor. I see that my time is up. If Your Honors have no more questions, I simply ask the court to reverse the conviction in this matter. Thank you. Thank you, Mr. Caddy. Thank you, Mr. Davis. We'll take the case under advisement.